### Richmond

ALFRED W. NEWTON AND CATHERINE M. NEWTON v. RICHARD V. WILSON AND FLORENCE N. WILSON.

June 22, 1959.

Record No. 4962.

Present, All the Justices.

The opinion states the case.

*Philip L. Russo* (*Russo & White*, on brief), for the appellants.

*James M. Pickrell; Kellam & Kellam*, for the appellees; submitted on brief.

Eggleston, C. J., delivered the opinion of the court.

This case, which is before us for the second time, involves the unusual situation in which Alfred W. Newton and Catherine M. Newton, the natural parents of James Edward Legere Newton, are contesting the validity of an order of the lower court consummating the adoption of their son by his older sister, Florence N. Wilson, and her husband, Richard V. Wilson. On the former appeal we reversed a previous order of adoption and remanded the case to the lower court for the hearing of evidence, which had been denied, on the allegations of the petition of the natural parents that the interlocutory order of adoption should be revoked and the proceedings dismissed because there had been later developments which showed that the consummation of the adoption would not be for the best interests of the boy. *Newton v. Wilson,* 199 Va. 864, 102 S. E. 2d 299.

After hearing the additional evidence ore tenus the lower court adhered to its former view and entered an order denying the revocation of the interlocutory order and consummating the adoption. From that order the natural parents of the boy have again appealed.

As stated in the former opinion, with the written consent of the natural parents, the petition for adoption was filed by the proposed adoptive parents on December 31, 1954. At that time the boy, who was eleven and one-half years old, was living with the Wilsons, the proposed adoptive parents, in Norfolk county. Wilson was then a chief petty officer in the United States Navy and stationed in the Norfolk area. The natural parents then lived in California.

Pursuant to Code, § 63-352, as amended, the usual interlocutory order of adoption, subject to the probation period, was entered on June 20, 1955. For about a year thereafter, according to the reports of the several visiting agents of the Commissioner of Public Welfare, the boy was happy in the Wilson home and the situation was entirely agreeable to all parties concerned. In May, 1956, Wilson was transferred to Pearl Harbor and the boy was left temporarily with his mother at her home in California.

On July 30, 1956, the natural parents filed in the lower court their petition and later an amended petition praying for a revocation of the interlocutory order of adoption, on the grounds that they had withdrawn their consent to the adoption and that since the entry of the interlocutory order there had been developments which showed that the adoption would not be for the boy's best interests. As has been

said, it was the refusal of the lower court to hear the evidence of the natural parents in support of these allegations which brought about the reversal on the first appeal.

It is unnecessary that we detail the evidence heard in the lower court since the last appeal. Unfortunate as it may be, embittered by this contest, each couple sought to show that the other was unfit to have the care, custody and upbringing of this boy. There was evidence, vigorously denied by her, that prior to her present marriage Mrs. Wilson had been guilty of immoral conduct. But, as the lower court found, she is now happily married to her present husband and they have a comfortable home which is quite suitable for the proper upbringing of this boy.

It was shown, and admitted, that the natural parents, divorced in 1945, had resumed marital relations without remarrying. Mrs. Newton sought to excuse this by saying that she is a member of the Roman Catholic Church which does not recognize divorces, and that according to her faith she and her husband are still married. It is stated in the brief, and not denied, that they were remarried on July 19, 1958, since the last hearing in the lower court. They own a small farm near Roseberg, Oregon, where they propose to make their home with their son if the adoption proceedings are dismissed. The father, Alfred W. Newton, is a millwright by trade, and the mother, Catherine M. Newton, is a schoolteacher.

In its written opinion the lower court found that as between the two households that of the Wilsons was more comfortable, stable and suitable for the upbringing of this boy than that of his natural parents. It also found that the Wilsons would be more likely than his natural parents to exercise over him the discipline which he so much needed, and that the influence of Wilson would be especially beneficial to the boy.

But there are other factors which must be considered in determining whether the consummation of the adoption will be for the boy's best interests. His natural parents are now opposed to and contesting the adoption. And what is more serious, the boy himself is now bitterly opposed. Indeed, the lower court found in its opinion that the boy's attitude was mainly responsible for that of his mother.

When asked to explain to that court why he was opposed, the boy gave this simple and natural reply: "Because I want to be with my mother and father. I just don't like it with them [the Wilsons]. I think they should be my sister and brother-in-law, and not my

mother and father." As the lower court said in its opinion, the boy "very decidedly does not want to be adopted by his sister and stated that he is 'not afraid of Rick (Mr. Wilson) but doesn't like Flo (Mrs. Wilson).'" While it also noted that the boy had threatened to shoot himself if he were returned to his sister, the court characterized this as nothing more than the display of temper of a willful and spoiled child.

The lower court concluded that while the boy's opposition to the adoption "should be considered," it was not a "controlling factor," and that notwithstanding that attitude the adoption would be for his best interests and should be consummated.

We do not agree with this conclusion. While ordinarily the attitude of the child to its proposed adoption is not controlling, we are here concerned with an unusual situation. At the time of the last hearing the boy was fifteen years old and will be sixteen at his next birthday, in July. Had he been of that age when the petition was filed, his consent would have been required. (Code, § 63-351, as amended.) His desire to return to and remain with his parents, and their desire to have him do so, are natural and instinctive. The desire of the sister and her husband to adopt this half-grown boy against his will is strange, unusual and unnatural. As was suggested in our former opinion, "If it be true, as alleged, that he is now opposed to the consummation of the adoption, it is difficult to understand why the prospective adoptive parents, one of whom is his own sister, would want to pursue that course." (199 Va., at page 869, 102 S. E. 2d, at page 303.) That observation still holds true.

It is inconceivable that after this protracted litigation, in which the minds and hearts as well as the conduct of the principal actors have been laid bare and discussed, this sixteen-year-old boy can be happy in the home of his sister and her husband who insist upon taking him there against his wishes and those of his natural parents. Common sense tells us that such a situation would lead to unhappiness, discord and trouble. Clearly, this would not be conducive to the best interests or welfare of this boy, with which we are here mainly concerned.

The order appealed from is reversed, the interlocutory order of adoption set aside, and the proceeding dismissed.

*Reversed and dismissed.*